**LAW OFFICES OF DANIEL M. KATZNER, PC**
Daniel M. Katzner (DK9689)
1025 Longwood Avenue
Bronx, NY 10459
Tel.: (718) 589-3999

Counsel to the Debtor

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | HEARING DATE: JULY 24, 2008 |
| **SOUTHERN DISTRICT OF NEW YORK** | HEARING TIME: 2:00 P.M. |

-----------------------------------------------------------X

In re:                                              Chapter 11

Pace Product Solutions, Inc.                        Case No. 08-12666 (MG)


                    Debtor
-----------------------------------------------------------X

### DEBTOR'S OBJECTION TO THE APPLICATION OF THE UNITED STATES TRUSTEE SEEKING AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, CONVERTING THE CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

The debtor, Pace Product Solutions, Inc. (the "Debtor"), by and through its counsel, The Law Offices of Daniel M. Katzner, P.C., as its response to the application of the United States Trustee ("U.S. Trustee") seeking an order directing the appointment of a Chapter 11 Trustee or, in the alternative, converting the case to a case under chapter 7 of the Bankruptcy Code (the "Application"), respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  The Debtor objects to the U.S. Trustee's Application which seeks the appointment of a Chapter 11 Trustee or to convert this case to a case under Chapter 7 of the Bankruptcy Code, but only insofar as the Court would have denied the related relief requested in the motion of Summa Capital Corp. ("Summa") for relief from the automatic stay (the "Motion").

2. If the Court were to Order the related relief requested in the Motion, then the Debtor would request that (i) a Chapter 11 Trustee be appointed and the Debtor's principal, Boaz Bagbag, be permitted to remain in a managerial position in the company, or, (ii) if said relief were denied, for the conversion of this case to a case under chapter 7 of the Bankruptcy Code

## FACTS

3. For a recitation of the relevant facts of this proceeding, the Debtor would respectfully refer the Court to the Debtor's Objection to the Motion of Summa Capital Corp. for Relief from the Automatic Stay and for Related Relief dated July 21, 2008 and the Declaration of Boaz Bagbag dated July 21, 2008 (the "Objection").

4. Although the Debtor admitted at the evidentiary hearing held on July 21, 2008 that it had taken improper actions with regards to the use of cash collateral since the filing of its Petition, it similarly demonstrated that at no time did it take any steps to defraud the creditors of the bankruptcy estate or to dissipate its inventory or other secured collateral.

5. Rather, the Debtor has been fully forthcoming in all of its actions both leading up to and after the filing of its petition and has done nothing to mislead the Court or to indicate that it will not be willing to comply with the Bankruptcy Code and U.S. Trustee Chapter 11 Guidelines if this case is permitted to proceed.

6. The Debtor has demonstrated that the only reason it may have undertaken actions in violation of the Bankruptcy Code was for the sole purpose of keeping the business operating and to salvage any chance for a successful reorganization.

7. All of the cash collateral that has come into the Debtor's possession post-filing, but prior to the Court's Order on July 21, 2008 to retain said monies, has been deposited into the

Debtor's existing account and not to the account of any subsidiary or non-debtor entity. In addition, the Debtor can account for all of the cash collateral that it has received both before and after the filing of the Petition and the only funds that may have been expended is the bare minimum of cash necessary to continue its operations as a debtor-in-possession. See Declaration of Boaz Bagbag dated July 21, 2008 ("Bagbag Decl."), Exhibit ("Ex.") "N", "O". Finally, at the evidentiary hearing, it is believed that the Debtor only stated that he has the ability to transfer all the cash collateral that should be present, but the loan that was made was for $100,000.00 and was given several months prior to filing.

8. Towards this same end, the Debtor did, in fact, attempt to open a debtor-in-possession bank account, but was unable to do so as a result of a freeze to the Debtor's President's social security number.

9. The Debtor was forced to file this Petition with almost no preparation based on the impending Order to Show Cause filed by Summa in the State Court action. See Opposition at 12. The Debtor did not have an opportunity to take the necessary steps before filing to ensure compliance with all sections of the Bankruptcy Code and the U.S. Trustee's Operational Guidelines, such as obtaining sufficient cash collateral to operate until a motion could be filed to authorize the use of the same or to change its books and records as a debtor-in-possession.

10. Since that time, however, the Debtor has strictly complied with all Orders of this Court and has given absolutely no indication that it will not continue to do so. The Debtor fully cooperated with the inspection of its assets by Summa, attended a deposition almost immediately thereafter on a Sunday morning and was completely honest and forthcoming at the evidentiary hearing held on July 21, 2008.

## RESPONSE

A.     **There Has Been No Showing of "Cause" Under Section 1104(a)(1).**

11.    **The law is clear that the appointment of a trustee is an extraordinary remedy and therefore should be the exception rather than the rule.**  In re Sharon Steel Corp. 871 F.2d 1217, at 1225(3d Cir. 1989)**.**

12.    The Debtor has not committed any fraud, dishonesty, incompetence or gross mismanagement that would constitute "cause" and warrant the appointment of a trustee.

13.    The allegation that the Debtor's actions rise to the level of gross mismanagement that would necessitate the appointment of a trustee is not supported by the facts.  The actions of the Debtor are most likely the only way the business could have survived after the commencement of this bankruptcy proceeding and has provided at least an opportunity for the distribution of funds to unsecured creditors.

14.    It is acknowledged that there are several other factors that a court may consider in determining whether "cause" exists under Section 1104(a) of the Bankruptcy Code, but the Debtor would maintain that none of these are sufficient when applied to this case to warrant the extreme relief being sought herein.

15.    There has been no waste or squandering of corporate assets, no pre-petition fraudulent transfers, no diversion of funds and all records of the Debtor have been more than adequately maintained.  See generally In re: Intercat, Inc., 247 B.R. 911, 920-21 (Bankr. S.D. Ga. 2000).  In re: PRS Ins. Group, Inc. 274 B.R. 381 (Bankr. D. Del. 2001). In re: Oklahoma Refining Co., 838 F.2d 1133, 1136 (10th Cir. 1988).

16.    The Debtor has actually demonstrated its intention to correct its mistakes and comply with all of its fiduciary duties going forward.

**B.     It is in the Best Interests of the Creditors of the Estate for the Debtor to Remain as a Debtor-In-Possession and for this Case to Remain as a Chapter 11 Proceeding.**

17.    For the reasons set forth above, the Debtor has demonstrated its trustworthiness and clear intention to comply with the Bankruptcy Code, this Court's Orders and the requirements of the U.S. Trustee's office and there is no cause for appointment of a trustee.

18.    If a trustee is appointed and/or the current principal, Boaz Bagbag, is not permitted to remain in a managerial role in the company, then there is no question that this will be to the detriment of all creditors of the estate. Mr. Bagbag has a long-standing relationship with his customers and the experience and knowledge in his field to ensure that the maximum value is obtained for all the Debtor's assets. In addition, if a successful reorganization is obtained, then this would allow for the continuation of the Debtor's business in the future.

19.    Moreover, there is at least $300,000.00 in non-encumbered assets that can be used to payback the unsecured creditors if this case is not converted to Chapter 7.

20.    Summa's only contentions at the evidentiary hearing to dispute that the Debtor has significant equity in its assets was to raise the amount of its claim by almost $200,000.00. The Debtor disputes the validity of this assertion and, regardless, it does not take into consideration the Debtor's meritorious counterclaims.

21.    Even assuming that this claim were accurate though, the Debtor has accounts receivables worth at least $314,314.63, inventory worth at least $1,610,899.88 as of July 15, 2008, and other assets worth an additional $100,000.00, for a total value of $2,025,214.51. Accordingly, if the Debtor is permitted to sell its non-encumbered assets in the ordinary course of business, the unsecured creditors should receive at least $300,000.00. This would not only be sufficient to repay Summa, but to also pay a large portion of the unsecured claims of the estate without even considering the additional profit that could be earned by the Debtor in the future.

22. It is acknowledged that this is a relatively small asset case that would not normally be sufficient for the appointment of a trustee in lieu of conversion to Chapter 7, but there is clearly a great enough benefit to the unsecured creditors to warrant the continuation of the business.

**C. The Debtor Would Consent to the Appointment of a Trustee or Conversion to Chapter 7 if the Alternative was the Related Relief Requested by Summa.**

23. In the unlikely event that the Court were to Order the related relief requested by Summa to take possession of all the Debtor's assets, then the Debtor would consent to a trustee be appointed to manage the bankruptcy estate. The Debtor would again request, though, that its principal, Boaz Bagbag, be permitted to remain in a managerial role to provide assistance as set forth above.

24. If this request were to also be denied, then the Debtor would prefer the orderly liquidation of its assets pursuant to Chapter 7 of the Bankruptcy Code. By having the Court administer the Chapter 7 proceeding, rather than turning everything over to Summa, it would ensure the maximum value for the Debtor's assets are obtained.

## WAIVER OF FILING OF MEMORANDUM OF LAW

25. As the Application and this Response present no novel issues of law and are being heard on shortened notice, the Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to S.D.N.Y. L.B.R. 9013-1(b).

**CONCLUSION**

For all the foregoing reasons, the Debtors respectfully request that this Court deny the U.S. Trustee's Application directing the appointment of a Chapter 11 Trustee or, in the alternative, converting the case to a case under chapter 7 of the Bankruptcy Code.

Dated: Bronx, New York
July 24, 2008

/s/ Daniel M. Katzner
Daniel M. Katzner, Esq. (DK9689)
Counsel for the Debtor
1025 Longwood Avenue
Bronx, NY 10459
Tel.: (718) 589-3999